FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SARAI C.,[1] | No. 4:20-cv-05202-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | **ECF Nos. 22, 26** |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 22, 26.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 22, and grants Defendant's motion, ECF No. 26.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER - 3

1  substantial gainful work which exists in the national economy."  42 U.S.C. §

2  1382c(a)(3)(B).

3        The Commissioner has established a five-step sequential analysis to

4  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

5  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

6  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

7  gainful activity," the Commissioner must find that the claimant is not disabled.  20

8  C.F.R. § 416.920(b).

9        If the claimant is not engaged in substantial gainful activity, the analysis

10 proceeds to step two.  At this step, the Commissioner considers the severity of the

11 claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

12 "any impairment or combination of impairments which significantly limits [his or

13 her] physical or mental ability to do basic work activities," the analysis proceeds to

14 step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

15 this severity threshold, however, the Commissioner must find that the claimant is

16 not disabled.  *Id.*

17        At step three, the Commissioner compares the claimant's impairment to

18 severe impairments recognized by the Commissioner to be so severe as to preclude

19 a person from engaging in substantial gainful activity.  20 C.F.R. §

20 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER - 4

1  enumerated impairments, the Commissioner must find the claimant disabled and

2  award benefits.  20 C.F.R. § 416.920(d).

3       If the severity of the claimant's impairment does not meet or exceed the

4  severity of the enumerated impairments, the Commissioner must pause to assess

5  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6  defined generally as the claimant's ability to perform physical and mental work

7  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9       At step four, the Commissioner considers whether, in view of the claimant's

10  RFC, the claimant is capable of performing work that he or she has performed in

11  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

12  capable of performing past relevant work, the Commissioner must find that the

13  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

14  performing such work, the analysis proceeds to step five.

15       At step five, the Commissioner considers whether, in view of the claimant's

16  RFC, the claimant is capable of performing other work in the national economy.

17  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

18  must also consider vocational factors such as the claimant's age, education and

19  past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20  Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On June 11, 2018, Plaintiff applied for Title XVI supplemental security income benefits alleging an amended disability onset date of June 11, 2018.[3]  Tr.

---

[3] Plaintiff previously applied for Title XVI benefits on November 13, 2012; the application was denied and resulted in a December 30, 2015 unfavorable decision from an ALJ.  Tr. 76-99.  The Appeals Council declined to review in the decision in a letter dated March 24, 2017.  Tr. 100-05.  At the 2020 hearing, the ALJ found that although the prior unfavorable ALJ decision created a presumption of continuing non-disability under *Chavez*, the presumption had been rebutted because of changed circumstances due to a change of age.  Tr. 20-21, *see Chavez v.*

ORDER - 6

20, 118, 246-54.  The application was denied initially, and on reconsideration.  Tr. 135-40, 144-48.  Plaintiff appeared before an administrative law judge (ALJ) on May 28, 2020.  Tr. 41-75.  On June 17, 2020, the ALJ denied Plaintiff's claim.  Tr. 15-36.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 11, 2018.  Tr. 24.  At step two, the ALJ found that Plaintiff has the following severe impairments: adjustment disorder, with depression and anxiety; posttraumatic stress disorder (PTSD); and borderline intellectual functioning.  *Id*.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  *Id*.  The ALJ then concluded that Plaintiff has the RFC to perform work at all exertional levels with the following limitations:

> [Plaintiff] has no postural, manipulative, visual, or communicative limitations.  Regarding the environment, [Plaintiff] should avoid concentrated exposure to fumes, odors, dust, gases, or poor ventilation.  Regarding mental abilities, [Plaintiff] has the ability to understand, remember or apply information that is simple and routine, commensurate with SVP 2.  Regarding interaction with others, [Plaintiff] would work best in an environment in proximity to, but not close cooperation, with co-workers and supervisors, and should work

*Bowen*, 844 F.2d 691, 693 (9th Cir. 1998); *see also* Acquiescence Ruling (AR) 97-4(9), available at 1997 WL 742758 at *3.

ORDER - 7

in an environment away from the public.  With legally required breaks, [Plaintiff] has the ability to concentrate, persist, and maintain pace.  Regarding the ability to adapt or manage; [Plaintiff] has the ability to respond appropriately, distinguish between acceptable and unacceptable work performance; or be aware of normal hazards and take appropriate precautions.

Tr. 26.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 30.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as laundry worker I, and basket filler.  Tr. 31.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  Tr. 31-32.

On August 26, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-8, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

ORDER - 8

3.  Whether the ALJ conducted a proper step-two analysis;

4.  Whether the ALJ conducted a proper step-three analysis; and

5.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 22 at 6.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly evaluate the opinions of Philip G. Barnard, Ph.D., and Phyllis N. Sanchez, Ph.D.  ECF No. 22 at 8-13.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment,

ORDER - 9

frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are

ORDER - 10

not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(b)(3).

The Ninth Circuit recently addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, No. 21-35458, 2022 WL 1195334, at *3 (9th Cir. Apr. 22, 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at *3-4. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at *6. However, the ALJ is not required to make specific findings regarding the relationship factors. *Id.* Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.*

ORDER - 11

*1. Dr. Barnard*

On May 15, 2018, Dr. Barnard completed a mental health evaluation on behalf of Washington State DSHS and rendered an opinion on Plaintiff's level of functioning.  Tr. 401-05.  Dr. Barnard diagnosed Plaintiff with borderline intellectual functioning, persistent depressive disorder (dysthymic disorder), and generalized anxiety disorder.  Tr. 402.  He opined she had marked limitation in her ability to learn new tasks, perform routine tasks without special supervision, maintain appropriate behavior in a work setting, and complete a normal workday and workweek without interruptions from psychologically based symptoms; and moderate limits in her ability to understand, remember, and persist in tasks by following very short and simple instructions or detailed instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, make simple work-related decisions, be aware of normal hazards and take appropriate precautions, ask simple questions or request assistance, communicate and perform effectively in a work setting, and set realistic goals and plan independently.  Tr. 403.  He indicated the overall severity based on the combined impact of her impairments was marked and that the effects on basic work activities was not primarily the result of a substance use disorder.  *Id*.  He opined her limitations would persist following 60 days of sobriety and did not

ORDER - 12

1  recommend chemical dependency assessment or treatment. *Id*. He indicated she

2  would be so impaired for 12 to 24 months and that vocational training or services

3  would partially eliminate barriers to employment; he explained when Plaintiff

4  "completes high school, she would benefit from vocational training that would

5  help her improve her job seeking skills and help her in finding employment that is

6  appropriate for her." *Id*. He further explained that she would benefit from weekly

7  individual psychotherapy, which should "focus on giving her the tools and skills to

8  deal with her anxiety and depression." *Id*. The ALJ found Dr. Barnard's opinion

9  unpersuasive. Tr. 30

10      First, the ALJ determined that Dr. Barnard was unpersuasive because he

11  failed to address Plaintiff's substance use and its effect on her mental health, as

12  noted by DSHS reviewer Dr. Sanchez. Tr. 28, 30; *see* Tr. 552. Supportability is

13  one of the most important factors an ALJ must consider when determining how

14  persuasive a medical opinion is. 20 C.F.R. § 416.920c(b)(2). The more relevant

15  objective evidence and supporting explanations that support a medical opinion, the

16  more persuasive the medical opinion is. 20 C.F.R. § 416.920c(c)(1). Here, Dr.

17  Barnard noted Plaintiff began using marijuana at age 14 and used one to two times

18  a week, by her report. Tr. 402. He checked boxes on the form he used for her

19  evaluation indicating that her limitations in basic work activities were not the result

20  of a substance use disorder and that any limitations would persist following 60

ORDER - 13

days of sobriety, and that he did not recommend substance use evaluation or

treatment.  Tr. 403.  He did not provide additional explanation, although the form

indicates he should "please explain" findings concerning substance use.  *Id*.  The

ALJ noted that in a review of Dr. Barnard's evaluation/opinion a few days later,

however, Dr. Sanchez explained that Plaintiff's substance use needed to be

assessed further.  Tr. 28.  Dr. Sanchez explained that "[Plaintiff] is using

[marijuana] twice per week since early teens . . . needs to be assessed further as in

a young person . . . may delay or negatively impact brain development."  Tr. 552.

As to whether Plaintiff was primarily impaired by substance use, she opined this

was "unclear as this issue seems to have been ignored" by Dr. Barnard.  *Id*.  Dr

Sanchez indicated Plaintiff had the same limitations as assessed by Dr. Barnard,

and that Plaintiff's impairments would persist following a period of sobriety,

noting that "the [mental health] issues likely stand alone, but we do not know what

she would be like if there were a period of sobriety."  *Id*.  To the extent the

evidence could be interpreted differently, it is the role of the ALJ to resolve

conflicts and ambiguity in the evidence.  *See Morgan v. Comm'r of Soc. Sec.*

*Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).

Here, the ALJ found Dr. Barnard did not provide an explanation about the

effects of substance use on Plaintiff's mental health or functioning.  Tr. 28, 30.

Further, according to Dr. Sanchez, the DSHS psychologist who reviewed his

ORDER - 14

1  evaluation, "there was little to support" some of his other findings; and Dr.

2  Sanchez explained that in terms of Plaintiff's substance use "this issue seems to

3  have been ignored." Tr. 552. At the hearing, the medical expert, Dr. Toews, also

4  addressed Dr. Sanchez's opinion, noting her opinion that "the severity level . . .

5  was not supported by the medical evidence" and that "the primary impairment was

6  substance abuse and that that they would like to see her after 60 days of being

7  sober, to get a better idea of her functional data capability." Tr. 49. Where

8  evidence is subject to more than one rational interpretation, the ALJ's conclusion

9  will be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court

10  will only disturb the ALJ's findings if they are not supported by substantial

11  evidence. *Hill*, 698 F.3d at 1158. Here, Dr. Barnard did not provide an

12  explanation for his findings regarding the effect, if any, of Plaintiff's substance

13  use, and his findings about this issue were questioned by the psychologist who

14  reviewed his evaluation for DSHS and also the medical expert at the hearing. The

15  ALJ's conclusion that Dr. Barnard failed to address Plaintiff's substance use and

16  its effects on her mental health, as identified by Dr. Sanchez, is supported by

17  substantial evidence.

18      Next, the ALJ found Dr. Barnard's opinion unpersuasive because Dr.

19  Toews, the medical expert, explained at the hearing that testing did not support

20  marked limitations in functioning. Tr. 30. Consistency is one of the most

ORDER - 15

important factors an ALJ must consider when determining how persuasive a
medical opinion is. 20 C.F.R. § 416.920c(b)(2). The more consistent an opinion is
with the evidence from other sources, the more persuasive the opinion is. 20
C.F.R. § 416.920c(c)(2). Here, the ALJ noted Dr. Toews's testimony that sub-
scores upon testing by Dr. Barnard, along with similar testing by her school, were a
better indicator of Plaintiff's functioning than her full-scale IQ results. Tr. 30; *see*
Tr. 49, 51. At the hearing, Dr. Toews testified that testing performed by Dr.
Barnard showed that on "Wechsler Memory Scale 4th edition . . . her scores were
essentially within the average to low average range. And her visual working
memory was in the average range." Tr. 49. Dr. Toews also noted Weschler Adult
Intelligence Scale testing by Dr. Barnard "found that she was essentially
functioning in the low average to borderline range." *Id*. Dr. Toews testified that
past achievement testing through her school showed "no support for any kind of
learning disability," and the "only score that was below average was in
mathematics. All of the rest of her scores were within the average range . . . ." Tr.
51; *see* 387-91. Dr. Toews testified that based on his review of the record, Plaintiff
had some "adjustment concerns . . . probably a normal adjustment disorder" and
that in his opinion the record did not support diagnosis of a learning disorder,
borderline intellectual functioning, or any severe mental health impairment. Tr.
51-52.

ORDER - 16

Additionally, as discussed *supra*, in her 2018 review of Dr. Barnard's evaluation on behalf of DSHS, Dr. Sanchez indicated the diagnoses given by Dr. Barnard were only partially supported by objective medical evidence; she noted "the IQ score belies some fine strengths and weaknesses that the [full scale IQ score] simply glosses over." Tr. 552. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600. Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. Here, the ALJ based her findings on the testimony of the medical expert and the opinion of a reviewing psychologist, Dr. Sanchez, who both indicated test scores did not fully support Dr. Bernard's opinion of Plaintiff's diagnoses and functional limitations. The ALJ's conclusion that Dr. Barnard's opinion was unpersuasive because testing scores did not support marked limitations in functioning is supported by substantial evidence.

Finally, the ALJ concluded Dr. Barnard's opinion Plaintiff had marked limitation in her ability to learn new tasks was inconsistent with education records. Tr. 30. The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is. 20 C.F.R. § 416.920c(c)(2). Here, the ALJ noted Plaintiff's education records showed she could successfully participate in her courses so long as she kept up her attendance. Tr. 30 (citing Tr. 366-400). School

ORDER - 17

1   records cited by the ALJ include a psychoeducational evaluation and report from

2   October 2015, when Plaintiff was in tenth grade, where the evaluator noted "it

3   appears there may have been some effect on Plaintiff's performance within the

4   school setting as a result of significant attendance issues." Tr. 383. The evaluator

5   also noted "previous attendance issues within the family may suggest

6   environmental issues that get in the way of learning"; and he noted Plaintiff had

7   been referred for special education evaluations in the past, but "due to chronic

8   attendance issues during the previous 4 years it was not followed through on." *Id*.

9   The evaluator explained Plaintiff began having significant attendance issues

10  starting in 5th grade, noting she missed more than 30 days of school during her 9th

11  grade year. *Id*. The evaluator reported that "review of her previous report cards

12  show that her behavior and study skills were typically marked satisfactory when

13  her attendance was appropriate," but "when attendance became an issue both

14  behavior and study skills were marked as needing improvement." *Id*. The

15  evaluator noted she was passing all classes except for English and Algebra at that

16  time, but also explained that grades had "not been entered for her English class"

17  yet and "missing assignments in Algebra would account for her failing grade." Tr.

18  384. The evaluator also explained that Plaintiff's attendance "improved this year

19  and she [was] passing the majority of her classes" at the time of the evaluation. Tr.

20  390. The evaluator reported Plaintiff's "cognitive abilities are considered to be

ORDER - 18

similar to those individuals who are second language learners with the exception of her ability to process information within time constraints." Tr. 391. He further explained that her "[b]asic academic skills of reading and writing were found to be within the average range . . . the most significant area of deficit is math," although he noted she seemed to have basic knowledge of calculations. *Id*. Based on this evaluation, testing, and a diagnosis of ADHD, she was determined to be eligible for special education services in the area of math. *Id*.

Dr. Barnard's opinion that Plaintiff has marked limitations in her ability to learn new tasks appears inconsistent with education records, including a psychoeducational evaluation and report where the evaluator indicated she had generally average functioning and ability to pass her classes when she attended school regularly. The ALJ's conclusion that Dr. Barnard's opinion Plaintiff had marked limitation in her ability to learn new tasks was inconsistent with education records is supported by substantial evidence.

*2. Dr. Sanchez*

On May 16, 2018, Dr. Sanchez performed a review of medical evidence, including Dr. Barnard's evaluation, and rendered an opinion on Plaintiff's level of functioning for Washington State DSHS. Tr. 550-53. Dr. Sanchez diagnosed Plaintiff with persistent depressive disorder (dysthymia), generalized anxiety disorder, and borderline intellectual functioning. Tr. 551. Dr. Sanchez opined

ORDER - 19

1    Plaintiff had the same marked and moderate limitations as Dr. Barnard found,

2    *supra*.  Tr. 550.  Dr. Sanchez also opined, however, that Dr. Barnard's diagnoses

3    were only partially supported by available objective medical evidence; the severity

4    and functional limitations were not supported by available medical evidence; and

5    that Plaintiff was primarily impaired due to substance abuse, although she noted

6    this was unclear "as this issue seems to have been ignored" by Dr. Barnard.  Tr.

7    552.  She opined Plaintiff's impairments would be expected to persist following 60

8    days of sobriety, and she explained "the [mental health] issues likely standalone

9    but we do not know what she would be like if there were a period of sobriety."  *Id*.

10   The ALJ did not address the persuasiveness of Dr. Sanchez's opinion.  Tr. 30.

11          Plaintiff contends that the ALJ erred by relying on Dr. Sanchez's opinion

12   about Plaintiff's substance use needing to be assessed further because Dr. Sanchez

13   did not review any records within two years of the relevant time period other than

14   Dr. Barnard's opinion, and because the ALJ found any alleged substance use non-

15   severe and immaterial.  ECF No. 22 at 13-14.  Defendant contends the ALJ

16   considered Dr. Sanchez's opinion and referenced it in the decision and argues that

17   Plaintiff fails to show how the ALJ's consideration of Dr. Sanchez's opinion

18   constituted harmful error.  ECF No. 26 at 8.

19          As discussed in relation to Dr. Barnard's opinion *supra*, the ALJ reasonably

20   discussed Dr. Sanchez's opinion as to the effects of Plaintiff's substance use.

ORDER - 20

Additionally, the Court will only disturb the ALJ's findings if they are not supported by substantial evidence.  *Hill*, 698 F.3d at 1158.  As for Plaintiff's argument that Dr. Sanchez only reviewed one record during the period at issue, Dr. Sanchez indicated she also reviewed the psychoeducational report, referenced *supra*.  Tr. 552.  Although Plaintiff amended her alleged onset date at the hearing, the ALJ considered Plaintiff's education records in the decision and Plaintiff has also asked that education records prior to Plaintiff's amended onset date be considered.  *See* ECF No. 22 at 2, 11, 14.  Further, the medical expert testimony, which the ALJ found persuasive in part because Dr. Towes had the benefit of reviewing the record in its entirety, was similar to Dr. Sanchez's opinion concerning Plaintiff's substance use.  The ALJ's discussion of Dr. Sanchez's opinion in relation to Plaintiff's substance use was reasonable.

Further, the court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  While the ALJ did not address the supportability or consistency of Dr. Sanchez's opinion, as required by the regulations, Plaintiff did not raise this issue, and has therefore waived this argument.  Plaintiff is not entitled to remand on this issue.

ORDER - 21

**B. Step Two**

Plaintiff contends the ALJ erred by failing to identify ADHD as a severe impairment. ECF No. 22 at 14-15. At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c).

To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. § 416.921. In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion. *Id.*

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing,

ORDER - 22

pulling, reaching, carrying, or handling; seeing, hearing, and speaking;

understanding, carrying out and remembering simple instructions; responding

appropriately to supervision, coworkers, and usual work situations; and dealing

with changes in a routine work setting.  20 C.F.R. § 416.922(a); SSR 85-28.[4]

Step two is "a de minimus screening device [used] to dispose of groundless

claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying

our normal standard of review to the requirements of step two, [the Court] must

determine whether the ALJ had substantial evidence to find that the medical

evidence clearly established that [Plaintiff] did not have a medically severe

impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005).

Plaintiff argues the ALJ erred by rejecting ADHD as a severe impairment.

ECF No. 22 at 13-14.  At step two, the ALJ did not mention ADHD.  Tr. 24.

School records and medical records from 2015 through 2017 show diagnosis of

ADHD, treatment with medication, and eligibility for special education based on

ADHD.  *See, e.g.*, Tr. 311, 318, 438, 445.  While ADHD is included on diagnoses

---

[4] The Supreme Court upheld the validity of the Commissioner's severity

regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54

(1987).

ORDER - 23

lists in 2018, there is no evidence of treatment for ADHD after 2017. *See* Tr. 414, 507. At an appointment in March 2020 to establish care, for example, the provider noted Plaintiff had been treated for ADHD in the past and was taking her brother's ADHD medication at that time, but explained she was not being treated by any provider for ADHD. Tr. 507, 643. Plaintiff was not diagnosed with ADHD or prescribed treatment or medication at the 2020 appointment; she was referred for counseling and mental health screening, however, as her provider noted she wanted Plaintiff to be screened for ADHD along with other mental health issues at that time. Tr. 645.

Even if the ALJ should have considered ADHD, any error would be harmless because the step was resolved in Plaintiff's favor. *See Stout v. Comm'r of Soc. Sec. Admin*., 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch*, 400 F.3d at 682. Plaintiff makes no showing that ADHD creates limitations not already accounted for in the RFC. *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm). As such, Plaintiff has not met her burden in demonstrating this impairment is severe nor that the ALJ harmfully erred in failing to discuss it. The ALJ's step two finding is legally sufficient, and Plaintiff is not entitled to remand on these grounds.

ORDER - 24

1    **C. Step Three**

2    Plaintiff contends the ALJ erred at step three by failing to conduct an

3    adequate step three analysis and failing to find Plaintiff disabled.  ECF No. 22 at

4    14-15.  At step three, the ALJ must determine if a claimant's impairments meet or

5    equal a listed impairment.  20 C.F.R. § 416.920(a)(4)(iii).

6    The Listing of Impairments "describes for each of the major body systems

7    impairments [which are considered] severe enough to prevent an individual from

8    doing any gainful activity, regardless of his or her age, education or work

9    experience." 20 C.F.R. § 416.925.  "Listed impairments are purposefully set at a

10   high level of severity because 'the listings were designed to operate as a

11   presumption of disability that makes further inquiry unnecessary.'" *Kennedy v.*

12   *Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S.

13   521, 532 (1990)).  "Listed impairments set such strict standards because they

14   automatically end the five-step inquiry, before residual functional capacity is even

15   considered." *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for

16   disability, she will be found to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).

17   "To *meet* a listed impairment, a claimant must establish that he or she meets

18   each characteristic of a listed impairment relevant to his or her claim." *Tackett,*

19   180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d).  "To *equal* a

20   listed impairment, a claimant must establish symptoms, signs and laboratory

findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id.* However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683. "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." SSR 17-2p, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal the criteria of listings 12.04, 12.06, 12.11, and 12.15. Tr. 24. Plaintiff contends the ALJ erred by summarily concluding Plaintiff did not meet or equal a listed impairment and failing to explain the combined

ORDER - 26

effects of Plaintiff's impairments at step three.  ECF No. 22 at 14-15.  However, the step three findings by the ALJ must be read in conjunction with the entire ALJ decision.  SSR 17-2P, 2017 WL 3928306, at *4.  Here, the ALJ's analysis in its entirety as to Plaintiff's impairments permits the Court to meaningfully review the ALJ's finding that Plaintiff's impairments did not meet or equal the criteria of any listed impairment.

Further, courts will not find an ALJ has erred in determining whether combined impairments equal a listed impairment unless the Plaintiff has offered a "plausible theory" of medical equivalency.  *See Kennedy*, 738 F.3d at 1176-77 (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)).  Here, Plaintiff has failed to articulate how any of her impairments (or combination of impairments) meets or equals the criteria of any listed impairment and has not met the burden of demonstrating she meets or equals any listing.

The ALJ's determination that Plaintiff's mental impairments did not meet or equal a Listed impairment at step three is supported by substantial evidence.

**D. Plaintiff' Symptom Claims**

Plaintiff contends the ALJ improperly rejected Plaintiff's symptom complaints.  ECF No. 22 at 15-20.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine

whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER - 28

1    Factors to be considered in evaluating the intensity, persistence, and limiting

2    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

3    duration, frequency, and intensity of pain or other symptoms; 3) factors that

4    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

5    side effects of any medication an individual takes or has taken to alleviate pain or

6    other symptoms; 5) treatment, other than medication, an individual receives or has

7    received for relief of pain or other symptoms; 6) any measures other than treatment

8    an individual uses or has used to relieve pain or other symptoms; and 7) any other

9    factors concerning an individual's functional limitations and restrictions due to

10   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

11   416.929(c).  The ALJ is instructed to "consider all of the evidence in an

12   individual's record," to "determine how symptoms limit ability to perform work-

13   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.  Here, the ALJ found that

14   Plaintiff's medically determinable impairments could reasonably be expected to

15   cause the alleged symptoms, but that Plaintiff's statements concerning the

16   intensity, persistence, and limiting effects of her symptoms were not entirely

17   consistent with the evidence.  Tr. 27.

18      *1. Inconsistent with Objective Medical Evidence*

19      The ALJ found Plaintiff's symptom claims were inconsistent with the

20   objective medical evidence.  Tr. 27-28.  An ALJ may not discredit a claimant's

ORDER - 29

symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

Here, the ALJ found the objective medical evidence does not fully support the level of limitation claimed during the period at issue. Tr. 27. The ALJ noted a few examples of depressed/anxious mood and affect with poor hygiene on mental status exam. Tr. 27 (citing Tr. 576-77, 585). The ALJ explained, however, that mental status exams have been otherwise almost entirely within normal limits, with Plaintiff presenting as alert, oriented, cooperative, and pleasant, with good grooming and hygiene, and good eye contact; she also generally demonstrated normal mood, affect, speech, thought process, thought content, and normal insight and judgment, concentration, and memory. Tr. 27 (citing, e.g., Tr. 513, 574, 587, 619, 623, 644-45). The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of*

ORDER - 30

1  *Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

2  Further, where the ALJ's interpretation of the record is reasonable, as it is here, it

3  should not be second-guessed. *Rollins*, 261 F.3d at 857. The ALJ reasonably

4  concluded that the objective medical evidence did not support the level of

5  impairment alleged by Plaintiff during the period at issue.

6      *2. Inconsistent Treatment/Improved with Treatment*

7         The ALJ also discounted Plaintiff's symptom claims because Plaintiff has

8  not sought consistent mental health treatment and records show improvement with

9  treatment. Tr. 27. An unexplained, or inadequately explained, failure to seek

10  treatment or follow a prescribed course of treatment may be considered when

11  evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638

12  (9th Cir. 2007). When the evidence suggests lack of mental health treatment is

13  partly due to a claimant's mental health condition, however, it may be

14  inappropriate to consider lack of mental health treatment when evaluating the

15  claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462,

16  1465 (9th Cir. 1996). The effectiveness of medication and treatment is also a

17  relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R.

18  416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th

19  Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (A

20

1  favorable response to treatment can undermine a claimant's complaints of

2  debilitating pain or other severe limitations.).

3      While Plaintiff alleges disabling mental health limitations, she has not

4  received consistent mental health treatment; the ALJ noted, for example, that she

5  did not have counseling after 2015 until she started again in September 2019.  Tr.

6  27 (citing Tr. 588; *see* Tr. 47).  The ALJ also noted Plaintiff's report of

7  improvement in her symptoms after a few counseling sessions in November 2019;

8  the ALJ found this was "similar to her past when she declined medication due to

9  improved mood with reduced situational stressors."  Tr. 27 (citing Tr. 586, 588).

10 In a January 2020 counseling session, she also reported her depression had

11 improved, although she indicated she experienced recent stress due to motor

12 vehicle accidents and issues in her relationship with her boyfriend.  Tr. 575.

13     Plaintiff contends her failure to seek consistent treatment was due to her

14 mental health impairments, as she had the tendency to isolate and avoid others.

15 ECF No. 22 at 16.  However, the ALJ noted records showed "she regularly denied

16 mental health symptoms on symptom reviews and made no complaints of mental

17 health problems during health visits for acute physical problems."  Tr. 27 (citing

18 Tr. 506-22, 592-40).  The longitudinal record also shows reports of improvement

19 with treatment; records from July 2017, for example, show she reported her

20 depression and anxiety were well controlled with medication.  Tr. 430.  Her doctor

recommended she seek behavioral therapy and counseling at that time, in addition to medication.  Tr. 431.  As discussed *supra*, despite some abnormalities in the records, Plaintiff also had numerous normal mental status examinations.  Where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed.  *Rollins*, 261 F.3d at 857.  On this record, the ALJ reasonably discounted Plaintiff's symptoms claims because records show inconsistent treatment and improvement with treatment.

### 3. Work History

The ALJ found that Plaintiff "has no work history and . . . she has not attempted any vocational training, which raises the questions as to whether her continuing unemployment is actually due to medical impairments."  Tr. 28.  Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that she is unable to work.  *Thomas*, 278 F.3d at 959; *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 416.929 (work record can be considered in assessing symptom claims).  Here, however, Plaintiff points out that Plaintiff was 18 to 20 years old during the period at issue and was still in high school, where she was working to complete her senior year.  ECF No. 22 at 20.  Defendant does not address this argument or defend the ALJ's reasoning on this issue.  Plaintiff was in school full time during the period at issue and was attempting to complete a high school education, and on this record the

ORDER - 33

ALJ's discounting of her symptom claims due to her lack of work history or vocational training is not supported by substantial evidence.

While the ALJ erred by discrediting Plaintiff's symptoms complaints based on her lack of work history, the error is inconsequential to the ultimate disability determination and is harmless, as the ALJ provided other specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

*4.  Substance Use*

The ALJ also found Plaintiff "did not appear to be forthcoming about her substance use." Tr. 28.  Inconsistent statements about drug use are appropriate grounds for the ALJ to discount a claimant's reported symptoms. *Thomas*, 278 F.3d at 959; *Edlund*, 253 F.3d at 1157.  Here, the ALJ found some inconsistency with Plaintiff's report at the consultative exam that she uses marijuana one or two times a week, but only when she feels she "can't get through the day," and her

testimony at the hearing that she uses marijuana regularly.  Tr. 28 (citing Tr. 402).

The ALJ noted she asked Plaintiff at the hearing if any providers had told her

marijuana could be the cause of her paranoia, and Plaintiff testified "I think one of

my doctors did."  Tr. 28; *see* Tr. 67-68.  The ALJ also noted Plaintiff has reported

using her brother's ADHD medication and that records showed a urine screen in

December 2019 was positive for opiates.  Tr. 28; *see* Tr. 566, 643.  Plaintiff

contends she testified that she used "non-psychoactive CBD marijuana . . . not

THC-based marijuana" throughout the relevant time period, that marijuana has

been legal in Plaintiff's jurisdiction for a decade, and that no providers have

assessed her with a substance use disorder or advised her to discontinue use.  ECF

No. 22 at 19-20.  Defendant does not address this argument.

As discussed *supra*, the ALJ discounted the opinion of the consultative

examiner Dr. Barnard in part because he did not address the effect, if any, of

Plaintiff's reported marijuana use on her mental health symptoms.  The ALJ also

cited Dr. Sanchez, the provider who reviewed Dr. Barnard's evaluation for DSHS,

noting in her opinion Plaintiff's marijuana use needed to be assessed further.  Tr.

28.  Additionally, the ALJ found the testimony of the medical expert, Dr. Toews,

persuasive, noting Dr. Toews "did not see any evidence of long-term problems

outside of her substance abuse."  Tr. 29.  Plaintiff points out that the ALJ did not

determine she had a substance use disorder at step two.  ECF No. 22 at 19-20.  The

ALJ did acknowledge evidence of substance use in her records, however, and

noted both reviewing providers opinion that this could be an issue or have an effect

on her symptoms.  Tr. 28-29.  Records show she reported marijuana use starting at

age 14, and marijuana use was noted in medical records in 2018, 2019, and 2020;

at an evaluation in 2019, however, she denied any drug use.  *See* Tr. 402, 507, 563,

589.  Where the ALJ's interpretation of the record is reasonable it should not be

second-guessed.  *Rollins*, 261 F.3d at 857.  On this record, the ALJ reasonably

found that Plaintiff did not appear to be forthcoming about her substance use.

Even if the ALJ erred in this reasoning, as discussed *supra*, any error would be

harmless as the ALJ gave other clear and convincing reasons to discount Plaintiff's

symptom claims.

    Plaintiff is not entitled to remand on this issue.

**E. Step Five Analysis**

    Plaintiff argues the ALJ erred at step five.  ECF No. 22 at 20.  At step five of

the sequential evaluation analysis, the burden shifts to the Commissioner to

establish that 1) the claimant can perform other work, and 2) such work "exists in

significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*,

700 F.3d at 389.  In assessing whether there is work available, the ALJ must rely

on complete hypotheticals posed to a vocational expert.  *Nguyen,* 100 F.3d at 1467.

The ALJ's hypothetical must be based on medical assumptions supported by

ORDER - 36

1   substantial evidence in the record that reflects all of the claimant's limitations.

2   *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The hypothetical should

3   be "accurate, detailed, and supported by the medical record."  *Tackett*, 180 F.3d at

4   1101.

5       The hypothetical that ultimately serves as the basis for the ALJ's

6   determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

7   assessment, must account for all the limitations and restrictions of the claimant.

8   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  As

9   discussed above, the ALJ's RFC need only include those limitations found credible

10  and supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217

11  (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of

12  the limitations that the ALJ found credible and supported by substantial evidence

13  in the record.").  "If an ALJ's hypothetical does not reflect all of the claimant's

14  limitations, then the expert's testimony has no evidentiary value to support a

15  finding that the claimant can perform jobs in the national economy."  *Id*.  However,

16  the ALJ "is free to accept or reject restrictions in a hypothetical question that are

17  not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973

18  (9th Cir. 2006).  A claimant fails to establish that a step five determination is

19  flawed by simply restating an argument that the ALJ improperly discounted certain

20

evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76.

Plaintiff contends the ALJ erred by relying on the vocational expert's response to an incomplete hypothetical. ECF No. 22 at 20. Plaintiff's argument assumes that the ALJ erred in her analysis of the medical opinions and other evidence in the record. For reasons discussed throughout this decision, the ALJ's consideration of the evidence is legally sufficient and supported by substantial evidence. The ALJ has the discretion to evaluate and weigh the evidence and the Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's analysis. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work existing in the national economy, and the RFC adequately addresses the medical opinions and other evidence in this record. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

ORDER - 38

3. Defendant's Motion for Summary Judgment, **ECF No. 26**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 30, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 39